UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DUDLEY T. SCOTT,

                          Plaintiff,

v.

CITY OF ROCHESTER, et al.,

                          Defendants.

Case # 17-CV-6004-FPG

DECISION AND ORDER

## INTRODUCTION

On January 3, 2017 Plaintiff Dudley T. Scott filed a Complaint alleging that police officers pulled him over on August 21, 2014, handcuffed him and then beat him, violating his constitutional rights. ECF No. 1. In the Complaint, Scott alleges the following: in Count One, Defendant Police Officers Michael Feldman, Evan Henry, and Donald Flood violated Scott's Fourth Amendment rights by using excessive force; in Count Two, Defendants Feldman, Henry, and Flood violated Scott's Eighth Amendment rights by using excessive force; in Count Three, Defendants Feldman, Henry, and Flood violated Scott's Fourteenth Amendment rights by using excessive force; in Count Four, Defendant Police Officers Feldman, Randy Potuck, Henry, Jeff Kester, Flood, John Doe #1, and John Doe #2 violated Scott's Fourth, Eighth, and Fourteenth Amendment rights by delaying treatment of his injuries; in Count Five, Defendants Flood, Kester, and Potuck violated Scott's Fourth, Eighth, and Fourteenth Amendment rights by failing to intervene in the beating; in Count Six, Defendants Police Chief Michael L. Ciminelli, Feldman, Potuck, Henry, Kester, Flood, John Doe #1, and John Doe #2 violated Scott's Fourth, Eighth, and Fourteenth Amendment rights by conspiring to violate his constitutional rights; in Count Seven, Defendants City of Rochester and Chief Ciminelli are liable for the actions of the Defendant Police Officers since there is a widespread pattern of racial discrimination in the Rochester Police Department and Defendants

1

City of Rochester and Chief Ciminelli have taken inadequate steps to control the racial discrimination; in Count Eight, Defendants City of Rochester and Chief Ciminelli are liable for the actions of the Defendant Police Officers since there is a widespread use of excessive force in the Rochester Police Department and Defendants City of Rochester and Chief Ciminelli have failed to screen, train, and supervise Police Officers in the Rochester Police Department.

After receiving Scott's Complaint, Defendants failed to respond to the Complaint within the 21-day deadline. ECF No. 2. Scott moved for a default judgment on February 17, 2017. ECF No. 4.

Defendants opposed Plaintiff's Motion for Default, ECF No. 7, and further moved to dismiss Counts Two, Three, Six, Seven, and Eight of Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6). ECF No. 5. In his response, Plaintiff consented to the dismissal of Counts Two and Three. ECF No. 10 at 3. For the reasons that follow, Plaintiff's Motion for Default Judgment is DENIED and Defendants' Motion to Dismiss is GRANTED. Counts Six, Seven, and Eight are dismissed, and Defendants City of Rochester and Chief Ciminelli are terminated as Defendants in this case. Unchallenged, Counts One (excessive force under the Fourth Amendment), Four (delay in treatment), and Five (failure to intervene) remain.

## BACKGROUND

Plaintiff Dudley T. Scott alleges that Defendant Michael Feldman, a Rochester Police Officer, pulled him over on Maple Street in the early morning of August 21, 2014. ECF No. 1, at ¶ 21. Scott was ordered out of the car by Feldman, handcuffed, and beaten. *Id.* at ¶¶ 25-31. The beating included punches to Scott's left eye, right eye, and face, kicks to the body, and the use of a Taser. *Id.* at ¶¶ 27-31. Defendants Feldman, Evan Henry, and Donald Flood, all Rochester Police Officers, participated in the beating. *Id.* at ¶ 31. Scott at no point resisted. *Id.* at ¶ 37.

Scott sustained several injuries during the beating, including a concussion, permanent blindness in his right eye, orbital fractures, permanently diminished vision in his left eye and multiple bruises. *Id* at ¶ 36. After the beating, Defendants delayed treating Scott's injuries, worsening them. *Id.* at ¶¶ 84-90.

Scott further alleges that the beating is part of "a pattern of abuse and violence" against African-American men in violation of their constitutional rights perpetrated by the Rochester Police Department. *Id.* at ¶¶ 117, 129, 138. Scott alleges that Defendants City of Rochester and Rochester Chief of Police Chief Ciminelli failed to screen, train, and supervise officers to prevent the types of abuse experienced by Scott and other Rochester citizens, and created and/or enabled a custom and practice of the use of excessive force against African-American men. *Id.* at ¶¶ 140-143, 146. He further alleges that Defendants conspired to beat Scott and engaged in racial discrimination via the beating and ensuing delay in treatment. *Id.* at ¶¶ 119, 133.

## DISCUSSION

**1. Motion for Default Judgment**

Plaintiff Dudley T. Scott moves for a default judgment.

A party must follow a specific process to obtain a default judgment. Fed. R. Civ. P. 55; *Gasser v. Infanti Int'l, Inc.*, No. 03 CV 6413 (ILG), 2008 WL 2876531, at *6 n.6 (E.D.N.Y. July 23, 2008); *Brown v. Marshall*, No. 08-CV-12F, 2009 WL 1064189, at *1 (W.D.N.Y. Apr. 20, 2009). First, when a party has "failed to plead or otherwise defend" an action against it, the opposing party must secure an entry of default from the clerk via an affidavit or other showing. Fed. R. Civ. P. 55(a). Next, if the party seeking a default judgment is a plaintiff whose claim is a "sum certain" and the defendant is neither a minor nor incompetent, the plaintiff may request the clerk to enter a default judgment, and the clerk must oblige. Fed. R. Civ. P. 55(b)(1). "In all other

cases," the party seeking a default judgment must apply to the court. Fed. R. Civ. P. 55(b)(2). If the Clerk enters default against a defendant under Fed. R. Civ. P. 55(a), the Court may set it aside for good cause. Fed. R. Civ. P. 55(c). Default judgments are generally disfavored and are reserved for rare occasions. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).

The entry of default by the Clerk is a mandatory pre-condition to seeking a default judgment from the Court. *See, e.g., Perkins v. Napoli*, No. 08–CV–6248 CJS, 2010 WL 455475 at * 1 (W.D.N.Y. Feb. 4, 2010). It is undisputed that Plaintiff did not seek the entry of a default and subsequently the Clerk did not enter default against Defendants. Therefore, on this basis alone, Plaintiff's Motion for Default Judgment fails. On February 17, 2017 Scott filed his Motion for Default Judgment 40 minutes before Defendants filed their Motion to Dismiss, the latter eight days after missing the February 9, 2017 deadline for filing an answer to the Complaint. ECF Nos. 5, 7. The Motion for Default Judgment was Scott's first and only filing regarding the Defendants' default. He did not request Clerk to enter a default before his Motion for Default Judgment. Consequently, Scott failed to follow the proper procedure to obtain a default judgment.

Even if the Clerk of Court had entered default, the Court would find that good cause exists to set aside such a default. Good cause is determined via three criteria: "(1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party." *Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 454 (2d Cir. 2013).

A default is "willful" when it is deliberate and not brought on by outside factors. *Bricklayers & Allied Craftworkers Local 2, Albany Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 188 (2d Cir. 2015); *Guggenheim Capital, LLC*, 722 F.3d at 455. A defense is meritorious if it is "more than conclusory." *New York v. Green*, 420 F.3d 99, 110 (2d Cir. 2005); *Bricklayers*, 779 F.3d at 187. Finally, prejudice exists where delay will "thwart [the non-defaulting

4

party's] recovery or remedy[,]…result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Green*, 420 F.3d at 110 (quoting *Davis v. Musler*, 713 F.2d 907, 915 (2d Cir. 1983)).

Even if Scott had followed the proper procedure, Defendants have shown good cause to set aside a Clerk's entry of default. Defendants have demonstrated good cause, which would in any event cause a default judgment to be set aside.

First, the default was not willful. Defendants filed their Motion to Dismiss just eight days after missing the February 9, 2017 deadline. ECF No. 5. In their Memorandum of Law opposing Plaintiff's motion for default judgment, Defendants stated that they "inadvertently" missed the deadline due to a high workload. ECF No. 7. While the Court does not condone Defendant's disregard of the filing deadlines, the Court is satisfied that the default was accidental and not willful. Defendants also present a defense that is "more than conclusory." *Bricklayers*, 779 F.3d at 187. While they declined to address three of the claims Scott raises in his Complaint, they provide successful defenses to the remaining five claims, as the Court explains below. Finally, there is no prejudice present. No evidence will be lost, no discovery difficulties will be created, and no opportunity for fraud and collusion will be presented because of Defendants' default.

Accordingly, Plaintiff's Motion for Default Judgment is denied because he neglected to obtain a Clerk's entry of default, as required by Fed. R. Civ. P. 55(a), and even if he had, Defendants have shown good cause to allow the Court to set aside any Clerk's entry of default.

**2. Motion to Dismiss**

A complaint will survive a motion to dismiss when it states a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). A claim for relief is plausible when the plaintiff pleads sufficient facts that allow the

5

Court to draw reasonable inferences that the defendant is liable for the alleged conduct. *Ashcroft*, 556 U.S. at 678. A pleading that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. In considering the plausibility of a claim, the Court must accept factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). At the same time, the Court is not required to accord "[l]egal conclusions, deductions, or opinions couched as factual allegations . . . a presumption of truthfulness." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (quotation marks omitted); *see also Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987) ("As we have repeatedly held, complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.").

### a. Count Six – Conspiracy

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Gustafson v. Vill. of Fairport*, 106 F. Supp. 3d 340, 352 (W.D.N.Y. 2015) (quoting *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)).

"To withstand a motion to dismiss a § 1983...conspiracy claim, a plaintiff must provide some factual basis supporting a meeting of the minds, such as that defendants entered into an agreement, express or tacit, to achieve the unlawful end, augmented by some details of time and place and the alleged effects of the conspiracy." *K.D. ex rel. Duncan v. White Plains School Dist.*, 921 F. Supp. 2d 197, 208-09 (S.D.N.Y. 2013) (quoting *Romer v. Morgenthau*, 119 F. Supp. 2d 346, 363 (S.D.N.Y.2000)) (internal quotation marks omitted).

Count Six, alleging conspiracy, is dismissed since Scott's Complaint fails to plead facts that plausibly allege an agreement establishing a conspiracy. Scott alleges that Defendants Chief Ciminelli, Feldman, Potuck, Henry, Kester, Flood, John Doe #1, and John Doe #2 "conspired" to deprive Scott of his constitutional rights. ECF No. 1 at ¶¶ 119, 122. Scott provides no further allegations of "an agreement, express or tacit," or any "details of time and place." *K.D. ex rel. Duncan*, 921 F. Supp. 2d at 208. Scott's conclusory allegations are insufficient to state a plausible claim for relief. *Twombly*, 550 U.S. at 555. Accordingly, Count Six is dismissed.

b. **Municipal and Supervisory Liability Under § 1983**

A municipality may be held liable for a violation of a plaintiff's constitutional rights if the violation is "caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978)). Liability is generally not found where the plaintiff shows only "isolated acts of excessive force by non-policymaking municipal employees…." *Jones*, 691 F.3d at 81 (citing *Villante v. Dep't. of Corr.*, 786 F.2d 516, 519 (2d Cir. 1986)). To establish municipal liability for acts of non-policymaking municipal employees, a plaintiff must establish one of the following: (1) the acts were carried out "pursuant to a municipal policy"; (2) the acts "were sufficiently widespread and persistent to support a finding that they constituted a custom, policy, or usage of which [policymaking] authorities must have been aware"; or, (3) "a municipal custom, policy, or usage would be inferred from evidence of deliberate indifference of [policymaking] officials to such abuses." *Jones*, 691 F.3d at 81 (citing *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 125–26 (2d Cir. 2004)).

It is well settled that supervisors cannot be held liable under § 1983 solely on a *respondeat superior* theory. *See Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Ayers v. Coughlin*,

7

780 F.2d 205, 210 (2d Cir. 1985) (requiring "a showing of more than the linkage in the [] chain of command" to hold a supervisor liable under § 1983). "To state a claim under § 1983, a plaintiff must allege the personal involvement of each defendant." *Holland v. City of New York*, 197 F. Supp. 3d 529, 550 (S.D.N.Y. 2016) (citing *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986)). "Conclusory accusations regarding a defendant's personal involvement in the alleged violation, standing alone, are not sufficient, and supervisors cannot be held liable based solely on the alleged misconduct of their subordinates." *Id.* (quoting *Kee v. Hasty*, No. 01 Civ. 2123, 2004 WL 807071, at *12 (S.D.N.Y. Apr. 14, 2004)) (internal quotation marks omitted). "Rather, a plaintiff in a [§] 1983 action must show that the supervisor was personally involved in a constitutional violation by either (1) directly participating in the violation; (2) failing to remedy the violation after learning of it through a report or appeal; (3) creating a custom or policy fostering the violation or allowing the custom or policy to continue after learning about it; (4) being grossly negligent in supervising the officers involved; or (5) exhibiting deliberate indifference to the constitutional rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Id.* (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). A conclusory allegation of the personal involvement of supervisors is insufficient to state a claim for relief. *Bradley v. Rell*, 703 F. Supp. 2d, 124-25 (N.D.N.Y. 2010) (finding allegation that a supervisory defendant "responsibility stems from not providing adequate training to the officers of his department" insufficient to state a claim for relief); *Houghton v. Cardone*, 295 F. Supp. 2d 268, 276-77 (W.D.N.Y. 2003) (finding allegation that supervisory defendant "failed to adequately train or supervise the officers; (2) knew about and tolerated the officers' allegedly unlawful behavior; and (3) 'failed to institute a proper system of review and reprimand' of his deputies so as to prevent the types of unlawful acts alleged" insufficient to plausibly state a claim for relief).

Scott alleges widespread and persistent acts of racial discrimination in Count Seven and deliberate indifference via the failure to train, screen, and supervise its employees in Count Eight, both against Defendants City of Rochester and Chief Ciminelli. The Court addresses each Count below.

> i. **Count Seven – Racial Discrimination**

To establish a finding of a custom, policy, or usage, a plaintiff must show a *pattern* of abusive conduct so widespread and persistent that it must have been known and tolerated by policymaking officials. *Jones*, 691 F.3d at 82; *see also Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 440 (2d Cir. 2009) (denying summary judgment where the record showed more than a dozen acts). Such a finding may be inappropriate, however, even when a plaintiff alleges multiple instances of abusive conduct. *See Jones*, 691 F.3d at 81 (finding six incidents insufficient to support a judgment as a matter of law).

Scott alleges a "pattern [of abuse] so widespread that constructive knowledge by supervisors and policy makers, including Chief Ciminelli, may be inferred." ECF No. 1 at ¶130. He further states that "the City [of Rochester] has taken inadequate steps or no steps to control the abuse." ECF No. 1 at ¶ 131. He fails, however, to name any acts other than the beating he received that constitute the pattern he alleges. He simply alleges in conclusory fashion that the City of Rochester has taken inadequate steps to control the abuse and Chief Ciminelli is deliberately indifferent to a pattern of abuse. This "formulaic recitation of the elements of [the] cause of action will not do." *Twombly*, 550 U.S. at 555. Accordingly, Count Seven is dismissed.

> ii. **Count Eight – Failure to Screen, Train, and Supervise**

"The failure to train or supervise city employees may constitute an official policy or custom if the failure amounts to deliberate indifference . . . ." *Wray v. City of New York*, 490 F.3d 189,

9

195 (2d Cir. 2007) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)) (internal quotation marks omitted). "To establish deliberate indifference, a plaintiff must show that: [(1)] a policymaker knows to a moral certainty that city employees will confront a particular situation; [(2)] the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or there is a history of employees mishandling the situation; and [(3)] the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Wray*, 490 F.3d at 195-96 (quoting *Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir.1992)) (internal quotation marks omitted). Where a city has a training program, a plaintiff must also "identify a specific deficiency in the city's training program and establish that [the] deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation." *Wray*, 490 F.3d at 196 (quoting *Amnesty*, 361 F.3d at 129) (internal quotation marks omitted).

Count Eight's conclusory allegations fare no better. Scott alleges only that Defendants City of Rochester and Chief Ciminelli failed to "screen," "train," "discipline," and "supervise" police officers, including those officers involved in the alleged acts, and that Chief Ciminelli "creat[ed] and/or enable[ed] a custom and practice of excessive force…." ECF No. 1 at ¶¶ 140-47. Scott again neglects to allege any facts that state a plausible claim for relief under the required standards outlined above. Accordingly, Count Eight is also dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Default Judgment (ECF No. 4) is DENIED, Defendants' Motion to Dismiss (ECF No. 5) Counts Two, Three, Six, Seven, and Eight is GRANTED and the causes of action are DISMISSED. The Clerk of the Court shall terminate the City of Rochester and Chief Michael L. Ciminelli as Defendants in this case.

Unchallenged, Count One, claim of excessive force by Defendants Feldman, Henry, and Flood, Count Four, claim of delay in treatment by Defendants Feldman, Potuck, Henry, Kester, Flood, and Count Five, claim of failure to intervene by Defendants Flood, Kester, and Potuck remain.

By separate Order, this case will be referred to a United States Magistrate Judge for pretrial proceedings.

IT IS SO ORDERED.

Dated: September 25, 2017
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court